UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. ___13-20678___

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 1956(h)
18. U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 371
18 U.S.C. § 2
18 U.S.C. § 982



UNITED STATES OF AMERICA

vs.

MARLENE GUZMAN GARCIA,
ROSA MARIA GARCIA,
MIGUEL ANGEL PEREZ,
and
YULIANA MORENO GARCIA,

Defendants.
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1.     The Medicare Program ("Medicare") was a federal healthcare program providing benefits to persons who were over the age of 65 or disabled.  Medicare was administered by the United States Department of Health and Human Services ("HHS") through its agency, the Centers for Medicare & Medicaid Services ("CMS").  Individuals who received benefits under Medicare where referred to as Medicare "beneficiaries."

2.     Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.     "Part A" of the Medicare program covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), to beneficiaries who required home health services because of an illness or disability that caused them to be homebound. Payments for home health care medical services under Medicare Part A were typically made directly to an HHA or provider based on claims submitted to the Medicare program for qualifying services that had been provided to eligible beneficiaries, rather than to the beneficiary.

4.     Physicians, clinics, and other health care providers, including HHAs, that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare information number, the services that were performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other health care provider who ordered the services.

5.     CMS did not directly pay Medicare Part A claims submitted by Medicare-certified HHAs. CMS contracted with different companies to administer the Medicare Part A program throughout different parts of the United States. In the State of Florida, CMS contracted with Palmetto Government Benefits Administrators ("Palmetto") to administer Part A HHA claims. As administrator, Palmetto was to receive, adjudicate, and pay, claims submitted by HHA providers under the Part A program for home health claims.

## Part A Coverage and Regulations

### Reimbursements

6.     The Medicare Part A program reimbursed 100% of the allowable charges for participating HHAs providing home health care services only if the patient qualified for home health benefits.  A patient qualified for home health benefits only if:

a.     the patient was confined to the home, also referred to as homebound;

b.     the patient was under the care of a physician who specifically determined there was a need for home health care and established the Plan of Care ("POC"); and

c.     the determining physician signed a certification statement specifying that the beneficiary needed intermittent skilled nursing services, physical and occupational therapy ("PT/OT"), or speech therapy, and that the beneficiary was confined to the home; that a POC for furnishing services was established and periodically reviewed; and that the services were furnished while the beneficiary was under the care of the physician who established the POC.

7.     HHAs were reimbursed under the Home Health Prospective Payment System ("PPS").  Under PPS, Medicare paid Medicare-certified HHAs a predetermined base payment for each 60 days that care was needed. This 60-day period was called an "episode of care."  The base payment was adjusted based on the health condition and care needs of the beneficiary.  This adjustment was done through the Outcome and Assessment Information Set ("OASIS"), which was a patient assessment tool for measuring and detailing the patient's condition.  If a beneficiary was still eligible for care after the end of the first episode of care, a second episode

-3-

could commence. There were no limits to the number of episodes of home health benefits a beneficiary could receive as long as the beneficiary continued to qualify for home health benefits.

8.      In order to be reimbursed, the HHA would submit a Request for Anticipated Payment ("RAP") and subsequently receive a portion of its payment in advance of services being rendered. At the end of a 60 day episode, when the final claim was submitted, the remaining portion of the payment would be made. As explained in more detail below, "Outlier Payments" are additional PPS payments based on visits in excess of the norm. Palmetto paid Outlier Payments to HHA providers under PPS where the providers' RAP submissions established that the cost of care exceeded the established Health Insurance Prospective Payment System ("HIPPS") code threshold dollar amount.

<u>**Record Keeping Requirements**</u>

9.      Medicare Part A regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for reimbursement were submitted by the HHAs. These medical records were required to be sufficient to permit Medicare, through Palmetto and other contractors, to review the appropriateness of Medicare payments made to the HHA under the Part A program.

10.     Among the written records required to document the appropriateness of home health care claims submitted under Part A of Medicare was a POC that included the physician order for home health care, diagnoses, types of services/frequency of visits, prognosis/ rehabilitation potential, functional limitations/activities permitted, medications/treatments/

nutritional requirements, safety measures/discharge plans, goals, and the physician's signature. Also required was a signed certification statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health services, and an OASIS.

11.   Medicare Part A regulations required provider HHAs to maintain medical records of every visit made by a nurse, therapist, and home health aide to a beneficiary. The record of a nurse's visit was required to describe, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the patient, any teaching and the understanding of the patient, and any changes in the patient's physical or emotional condition. The home health nurse, therapist, and aide were required to document the hands-on personal care provided to the beneficiary as the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury. These written medical records were generally created and maintained in the form of "clinical notes" and "home health aide notes/observations."

## Special Outlier Provision

12.   Medicare regulations allowed certified home health agencies to subcontract home health care services to nursing companies, registries, or groups (nursing groups), which would, in turn, bill the certified home health agency. That certified home health agency would then bill Medicare for all services provided to the patient by the subcontractor. The HHA's professional supervision over arranged-for services required the same quality controls and supervision of its own employees.

13.   For insulin-dependent diabetic beneficiaries, Medicare paid for insulin injections by an HHA agency when a beneficiary was determined to be unable to inject his or her own

insulin and the beneficiary had no available care-giver able and willing to inject the beneficiary. Additionally, for beneficiaries for whom occupational or physical therapy was medically necessary, Medicare paid for such therapy provided by an HHA. The basic requirements that a physician certify that a beneficiary is confined to the home or homebound and in need of home health services, as certified by a physician, was a continuing requirement for Medicare to pay for such home health benefits.

14.     While payment for each episode of care was adjusted to reflect the beneficiary's health condition and needs, Medicare regulations contained an "outlier" provision to ensure appropriate payment for those beneficiaries that had the most extensive care needs, which may result in an Outlier Payment to the HHA. These Outlier Payments were additions or adjustments to the payment amount based on an increased type or amount of medically necessary care. Adjusting payments through Outlier Payments to reflect the HHA's cost in caring for each beneficiary, including the sickest beneficiaries, ensured that all beneficiaries had access to home health services for which they were eligible.

## The Defendants and Related Companies

15.     Home Care 4U, Inc. ("Home Care 4U") was a Florida corporation incorporated on or about September 20, 2004, that did business in Miami-Dade County, Florida, as an HHA that purported to provide home health care and physical therapy services to eligible Medicare beneficiaries. On or about September 27, 2005, Home Care 4U obtained Medicare provider number 108209, authorizing Home Care 4U to submit claims to Medicare for HHA-related benefits and services.

16.     A-Select Group Home Health Care, Inc. ("A-Select") was a Florida corporation incorporated on or about October 11, 2006, that did business in Miami-Dade County, Florida, as

an HHA that purported to provide home health care and physical therapy services to eligible Medicare beneficiaries. On or about June 15, 2009, A-Select obtained Medicare provider number 109357, authorizing A-Select to submit claims to Medicare for HHA-related benefits and services.

17.     Araxdelly Investments, Inc. ("Araxdelly Investments") was a Florida corporation incorporated on or about April 19, 2002, that purportedly did business in Miami-Dade County.

18.     S&A Staffing-Marketing & Services Corp. ("S&A Staffing") was a Florida corporation incorporated on or about September 14, 2004, that purportedly did business in Miami-Dade County.

19.     **ROSA MARIA GARCIA**, a resident of Miami-Dade County, Florida, was an owner, operator, president and registered agent of Home Care 4U.  **GARCIA** was also president and registered agent of Araxdelly and S&A.

20.     **MIGUEL ANGEL PEREZ**, a resident of Miami-Dade County, Florida, was an employee of Home Care 4U, and an owner, operator, president and registered agent of A-Select.

21.     **MARLENE GUZMAN GARCIA**, a resident of Miami-Dade County, Florida, was an owner and operator of Home Care 4U, and an owner, operator and vice-president of A-Select.

22.     **YULIANA MORENO GARCIA**, a resident of Miami-Dade County, Florida, was an administrator at Home Care 4U.

### Other Relevant Companies

23.     Celebration Home Services, Inc. ("Celebration") was a Florida company, incorporated on or about October 5, 2005, with its principal place of business in Broward County, in the Southern District of Florida. Maritza Lorza was the president, treasurer and

registered agent of Celebration. James Velasco was the vice-president and secretary of Celebration.

24.    4 All Your Needs, Inc. ("4 All Your Needs") was a Florida company, incorporated on or about May 5, 2006, with its principle place of business in Broward County, in the Southern District of Florida. James Velasco was the president, treasurer and registered agent of 4 All Your Needs. Maritza Lorza was the vice-president and secretary of 4 All Your Needs.

25.    Work Force Innovations, Co. ("Work Force") was a Florida company, incorporated on or about October 12, 2007, with its principal place of business in Broward County, in the Southern District of Florida. Maritza Lorza was the president, treasurer and registered agent of Work Force.  James Velasco was the vice-president and secretary of Work Force.

26.    Start Therapy, Inc. ("Start Therapy") was a Florida company, incorporated on or about December 11, 2002, with its principal place of business in Miami-Dade County, in the Southern District of Florida.  Isaura Bou-Melendez was the president and registered agent of Start Therapy.

27.    Font & Bou Rehab Associates, Inc. ("Font & Bou Rehab") was a Florida company, incorporated on or about December 11, 2002, with its principal place of business in Miami-Dade County, in the Southern District of Florida.  Gricel Font was the president and registered agent of Font & Bou Rehab. Isaura Bou-Melendez was the vice-president of Font & Bou Rehab.

## COUNT 1
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

1.      Paragraphs 1 through 25 of the General Allegations section of this Indictment are

realleged and incorporated by reference as though fully set forth herein.

2.      From in or around January of 2006, and continuing through in or around May of

2012, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**MARLENE GUZMAN GARCIA,**
**ROSA MARIA GARCIA,**
**MIGUEL ANGEL PEREZ,**
**and**
**YULIANA MORENO GARCIA,**

did knowingly and willfully combine, conspire, confederate, and agree with each other and with

others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section

1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting

commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to

obtain, by means of materially false and fraudulent pretenses, representations, and promises,

money and property owned by, and under the custody and control of, said health care benefit

program, in connection with the delivery of and payment for health care benefits, items, and

services.

### PURPOSE OF THE CONSPIRACY

3.      It was a purpose of the conspiracy for the defendants and their co-conspirators to

unlawfully enrich themselves by, among other things: (a) offering and paying kickbacks and

bribes to patient recruiters and Medicare beneficiaries in exchange for the use of the

beneficiaries' Medicare numbers as the bases of Medicare claims filed for home health care; (b)

submitting and causing the submission of false and fraudulent claims to Medicare; (c) concealing

-9-

of the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, and the payment of kickbacks; and (d) causing the diversion of the proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators and to further the fraud.

## MANNER AND MEANS

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things:

4.      **MARLENE GUZMAN GARCIA, MIGUEL ANGEL PEREZ** and their co-conspirators paid kickbacks to co-conspirator patient recruiters and Medicare beneficiaries for allowing the Medicare beneficiaries to be placed at Home Care 4U and A-Select, which billed Medicare for home health services that were not medically necessary and oftentimes not provided.

5.      **MARLENE GUZMAN GARCIA, YULIANA MORENO GARCIA, ROSA MARIA GARCIA, MIGUEL ANGEL PEREZ** and their co-conspirators caused patient documentation to be falsified to make it appear that Medicare beneficiaries qualified for and received home health services that were, in fact, not medically necessary and oftentimes not provided.

6.      **MARLENE GUZMAN GARCIA, YULIANA MORENO GARCIA, ROSA MARIA GARCIA, MIGUEL ANGEL PEREZ** and their co-conspirators filed and caused to be filed false and fraudulent claims with Medicare seeking payment for the costs of home health services that were not medically necessary and oftentimes not provided.

7.      As a result of these false and fraudulent claims, Home Care 4U and A-Select were paid more than $24 million by Medicare.

8. **MARLENE GUZMAN GARCIA, YULIANA MORENO GARCIA, ROSA MARIA GARCIA, MIGUEL ANGEL PEREZ** and their co-conspirators transferred the fraud proceeds to themselves and companies they controlled and used the proceeds to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-9
### Health Care Fraud
### (18 U.S.C. § 1347)

1. Paragraphs 1 through 25 of the General Allegations section of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2. From in or around January of 2006, and continuing through in or around May of 2012, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**MARLENE GUZMAN GARCIA,**
**ROSA MARIA GARCIA,**
**MIGUEL ANGEL PEREZ,**
**and**
**YULIANA MORENO GARCIA,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program.

### Purpose of the Scheme and Artifice

3. It was a purpose of the scheme and artifice for the defendants to unlawfully enrich themselves by, among other things: (a) offering and paying kickbacks and bribes to patient recruiters and Medicare beneficiaries in exchange for the use of the beneficiaries'

Medicare numbers as the bases of Medicare claims filed for home health care; (b) submitting and causing the submission of false and fraudulent claims to Medicare; (c) concealing of the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, and the payment of kickbacks; and (d) causing the diversion of the proceeds of the fraud for the personal use and benefit of the defendants and their accomplices and to further the fraud.

### The Scheme and Artifice

4.      The allegations contained in paragraphs 4 through 8 of the Manner and Means section of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Acts in Execution or Attempted Execution of the Scheme and Artifice

5.      On or about the dates specified as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants identified below, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in that the identified defendants submitted and caused the submission of false and fraudulent claims to Medicare seeking the identified dollar amounts, and representing that Home Care 4U and A-Select provided medical items and services to Medicare beneficiaries pursuant to physicians' orders and prescriptions:

| Count | Medicare Beneficiary | Defendants | HHA and Approx. Date of Submission of Claim | Medicare Claim Number | Services Claimed; Approx. Amount Claimed |
|---|---|---|---|---|---|
| 2 | O.V. | MARLENE GUZMAN GARCIA, ROSA MARIA GARCIA, YULIANA MORENO GARCIA, MIGUEL ANGEL PEREZ | Home Care 4U 09/03/2008 | 20833603325205 | OT and Skilled Nursing; $4,232 |
| 3 | O.V. | MARLENE GUZMAN GARCIA, ROSA MARIA GARCIA, YULIANA MORENO GARCIA, MIGUEL ANGEL PEREZ | Home Care 4U 01/13/2009 | 20901403871505 | OT and Skilled Nursing Services; $1,520 |
| 4 | J.H. | MARLENE GUZMAN GARCIA, ROSA MARIA GARCIA, YULIANA MORENO GARCIA, MIGUEL ANGEL PEREZ | Home Care 4U 04/28/2009 | 20911800588805FLR | Skilled Nursing; $12,000 |
| 5 | Z.A. | MARLENE GUZMAN GARCIA, ROSA MARIA GARCIA, YULIANA MORENO GARCIA, MIGUEL ANGEL PEREZ | Home Care 4U 09/09/2009 | 20925201008105FLR | Skilled Nursing Services; $12,000 |
| 6 | O.V. | MARLENE GUZMAN GARCIA, MIGUEL ANGEL PEREZ | A-Select 04/13/2010 | 21010301573605FLR | Skilled Nursing Services; $2,295 |
| 7 | H.C. | MARLENE GUZMAN GARCIA, MIGUEL ANGEL PEREZ | A-Select 10/28/2011 | 21130102688505FLR | PT/OT and Skilled Nursing Services; $5,845 |
| 8 | H.C. | MARLENE GUZMAN GARCIA, MIGUEL ANGEL PEREZ | A-Select 03/15/2012 | 21207502579007FLR | PT/OT and Skilled Nursing Services; $5,310 |
| 9 | J.H. | MARLENE GUZMAN GARCIA, MIGUEL ANGEL PEREZ | A-Select 04/20/2012 | 21211102712207FLR | PT Services; $3,755 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 10
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1.      Paragraphs 1 through 27 of the General Allegations section of this Indictment are

realleged and incorporated by reference as if fully set forth herein.

2.      From in or around June of 2007, and continuing through in or around December of 2009, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**MARLENE GUZMAN GARCIA**
**and**
**YULIANA MORENO GARCIA,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and with Maritza Lorza, James Velasco and others known and unknown to the Grand jury, to violate Title 18, United States Code, Section 1956(a)(1)(B)(i), that is, to knowingly conduct a financial transaction affecting interstate commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that such transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity.

3       It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347.

All in violation of Title 18, United States Code, Section 1956(h).

**COUNTS 11-19**
**Money Laundering**
**(18 U.S.C. § 1956(a)(1)(B)(i))**

1.      Paragraphs 1 through 27 of the General Allegations section of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2.      On or about the dates specified as to each count below, in Miami-Dade County, in

the Southern District of Florida, and elsewhere, the defendants,

## MARLENE GUZMAN GARCIA
### and
## YULIANA MORENO GARCIA,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that such transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, as set forth below:

| Count | Approximate Date of Transaction | Description of Financial Transaction |
|-------|--------------------------------|--------------------------------------|
| 11 | 11/1/2008 | The transfer of approximately $7,800 via check no. 186, drawn on the account of Home Care 4U, Inc., and made payable to Work Force. |
| 12 | 11/1/2008 | The transfer of approximately $7,217 via check no. 187, drawn on the account of Home Care 4U, Inc., and made payable to 4 All Your Needs. |
| 13 | 03/9/2009 | The transfer of approximately $8,250 via check no. 469, drawn on the account of Home Care 4U, Inc., and made payable to Celebration Home Services. |
| 14 | 3/9/2009 | The transfer of approximately $5,520 via check no. 470, drawn on the account of Home Care 4U, Inc., and made payable to Work Force Innovations. |
| 15 | 3/10/2009 | The transfer of approximately $6,220 via check no. 472, drawn on the account of Home Care 4U, Inc., and made payable to 4 All Your Needs Inc. |
| 16 | 9/16/2009 | The transfer of approximately $8,420 xxxxxxxx4036 via check no. 1216, drawn on the account of Home Care 4U, Inc., and made payable to Celebration Home Services. |

-15-

| Count | Approximate Date of Transaction | Description of Financial Transaction |
|-------|--------------------------------|--------------------------------------|
| 17 | 12/10/2009 | The transfer of approximately $8,560 via check no. 1403, drawn on the account of Home Care 4U, Inc., and made payable to 4 All Your Needs. |
| 18 | 12/12/2009 | The transfer of approximately $8,820 via check no. 1404, drawn on the account of Home Care 4U, Inc., and made payable to Celebration Home Services. |
| 19 | 12/15/2009 | The transfer of approximately $8,620 via check no. 1405, drawn on the account of Home Care 4U, Inc., and made payable to Work Force. |

3.      It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347.

In violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and 2.

**COUNT 20**
**Conspiracy to Solicit and Receive Health Care Kickbacks**
**(18 U.S.C. § 371)**

1.      Paragraphs 1 through 27 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      Beginning at least as early as in or around September of 2004, and continuing through at least in or around December of 2009, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**MARLENE GUZMAN GARCIA,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with Gricel Font, Isaura Bou, and others known and unknown to the Grand Jury, to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), that is, to knowingly and willfully solicit and receive any remuneration, including any kickback

-16-

and bribe, directly and indirectly, overtly and covertly, in cash and in kind, including by check, in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, that is, Medicare.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the defendant and her co-conspirators to unlawfully enrich themselves by: (1) soliciting and receiving kickbacks and bribes for referring Medicare beneficiaries to Start Therapy, Font & Bou Rehab, and other clinics so that the Medicare beneficiaries' information would serve as the bases of Medicare claims for physical and occupational therapy services; and (2) submitting and causing the submission of claims to Medicare for physical and occupational therapy services that the co-conspirators purported to provide to those beneficiaries.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and her co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.      **MARLENE GUZMAN GARCIA** solicited and received kickbacks from co-conspirators at Start Therapy, Font & Bou Rehab, and other clinics in return for referring Medicare beneficiaries to Start Therapy, Font & Bou Rehab and other clinics.

5.      **MARLENE GUZMAN GARCIA,** Gricel Font, Isaura Bou and their co-conspirators caused Start Therapy, Font & Bou Rehab, and other clinics to submit claims to Medicare for services purportedly rendered to the Medicare beneficiaries referred to Start Therapy, Font & Bou Rehab and other clinics by **GUZMAN**.

6.      **MARLENE GUZMAN GARCIA,** Gricel Font, Isaura Bou and their co-conspirators caused Medicare to pay Start Therapy, Font & Bou Rehab, and other clinics, based upon the services purportedly rendered to the Medicare beneficiaries referred by **GUZMAN**.

7.      Gricel Font, Isaura Bou and other co-conspirators at Start Therapy, Font & Bou Rehab, and other clinics paid **MARLENE GUZMAN GARCIA** kickbacks via checks written to Araxdelly Investments, S&A Staffing, 4 All Your Needs, Celebration and Work Force.

## <u>OVERT ACTS</u>

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed in the Southern District of Florida at least one of the following overt acts, among others:

1.      On or about October 10, 2008, a co-conspirator paid a kickback to **MARLENE GUZMAN GARCIA** through 4 All Your Needs via Font & Bou Rehab check No. 2623 in the approximate amount of $12,323.

2.      On or about January 7, 2009, a co-conspirator paid a kickback to **MARLENE GUZMAN GARCIA** through Work Force via Font & Bou Rehab check No. 2857 in the approximate amount of $4,925.

3.      On or about July 21, 2009, a co-conspirator paid a kickback to **MARLENE GUZMAN GARCIA** through 4 All Your Needs via Font & Bou Rehab check No. 3493 in the approximate amount of $5,500.

4.      On or about November 13, 2009, a co-conspirator paid a kickback to **MARLENE GUZMAN GARCIA** through Celebration via Font & Bou check No. 3818 in the approximate amount of $5,900.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE
### (18 U.S.C. § 982)

1.     The allegations contained in Counts 1 through 19 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which **MARLENE GUZMAN GARCIA, ROSA MARIA GARCIA, YULIANA MORENO GARCIA** and **MIGUEL ANGEL PEREZ** have an interest.

2.     Upon conviction of a violation of Title 18, United States Code, Section 1349 or 1347, a defendant shall forfeit to the United States his or her right, title and interest in any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense pursuant to Title 18, United States Code, Section 982(a)(7).

3.     Upon conviction of a violation of Title 18, United States Code, Section 1956, a defendant shall forfeit to the United States his or her right, title and interest in any property, real or personal, involved in such offense, or any property traceable to such property pursuant to Title 18, United States Code, Section 982(a)(1).

The directly forfeitable property includes but is not limited to:

      A.    <u>Bank Accounts</u>

          1.    Bank United Account #0464003318

          2.    Eastern National Bank Account #1112315912

          3.    BB&T Bank Account #1100001840329

          4.    Regions Bank Account #0097447919

          5.    Capital Bank Account #560002108206

6.      Total Bank Account #3001255906

B.      Real Property

1.      12904 Banyan Road North Miami, FL 33181

C.      Vehicles

1.      2008 Mercedes Benz, VIN# WDDNG71X98A191001

D.      Money Judgment

The sum that constitutes the gross proceeds the defendants derived from the offenses alleged in this Indictment, which sum may be sought as a money judgment.

4.      If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

Such substitute property includes but is not limited to:

A.      Real Property

1.      16901 SW 204 Street Miami, FL 33187

2.      1001 W 50 Place, Hialeah, FL 33012

3.      3852 NW 125 St, B3852 Miami, FL

-20-

    4.      7100 Fairway Dr, K16 Miami Lakes, FL 33014

    5.      1340 W 42 Place, Hialeah, FL

    6.      2124 NW 33 Street, Miami, FL

B.    <u>Vehicles</u>

    1.      2013 Jaguar VIN#SAJWA1C77D8V40427

    2.      2013 Land Rover VIN#SALAG2D4XDA652447

    3.      2012 Dodge VIN#3C63DRNL0CG345030

    4.      2006 Sea Vessel HIN#YAMA2675C606

           and Vessel Trailer VIN#146DB14126M045778

    5.      2013 33" foot Rinker Sea Vessel HIN#RNK94106A212

           and Vessel Trailer VIN#1ZJBB3138DM081579

All pursuant to Title 18, United States Code, Sections 982 (a)(1) and 982(a)(7) and the procedures outlined in Title 21 United States Code, Section 853, as incorporated by Title 18 United States Code, Section 982(b)(1).

A TRUE BILL

_____
FOREPERSON

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
JON M. JUENGER
ASSISTANT U.S. ATTORNEY

-21-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. _____ |
| vs. | |
| MARLENE GUZMAN GARCIA, et al. | **CERTIFICATE OF TRIAL ATTORNEY\*** |
| _____Defendants./ | **Superseding Case Information:** |

**Court Division:** (Select One)

| | | | |
|---|---|---|---|
| X | Miami | ___ | Key West |
| ___ | FTL | ___ | WPB    ___ FTP |

New Defendant(s)        Yes _____  No _____
Number of New Defendants   _____
Total number of counts      _____

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:    (Yes or No)    Yes
    List language and/or dialect    Spanish

4.  This case will take    _10_   days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)

    | | | | | | |
    |---|---|---|---|---|---|
    | I | 0 to 5 days | | Petty | | |
    | II | 6 to 10 days | X | Minor | | |
    | III | 11 to 20 days | | Misdem. | | |
    | IV | 21 to 60 days | | Felony | X | |
    | V | 61 days and over | | | | |

6.  Has this case been previously filed in this District Court?  (Yes or No)    _No_
    If yes:
    Judge: _____    Case No. _____
    (Attach copy of dispositive order)
    Has a complaint been filed in this matter?    (Yes or No)    _No_
    If yes:
    Magistrate Case No. _____
    Related Miscellaneous numbers: _____
    Defendant(s) in federal custody as of _____
    Defendant(s) in state custody as of _____
    Rule 20 from the _____    District of _____

    Is this a potential death penalty case? (Yes or No)    _No_

7.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to  October 14, 2003?  _____ Yes    X    No

8.  Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? _____ Yes    X    No

_____
JON M. JUENGER
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No.56108

\*Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: <u>MARLENE GUZMAN GARCIA</u>

**Case No**:

Count #: 1

<u>Conspiracy to Commit Health Care Fraud</u>

<u>Title 18, United States Code, Section 1349</u>

**\* Max. Penalty**:      (10) Ten years' imprisonment

Counts #: 2 - 9

<u>Health Care Fraud</u>

<u>Title 18, United States Code, Section 1347</u>

**\*Max. Penalty**:      (10) Ten years' imprisonment as to each count

Count #: 10

<u>Conspiracy to Commit Money Laundering</u>

<u>Title 18, United States Code, Section 1956(h)</u>

**\*Max. Penalty**:      (20) Twenty years' imprisonment

Count s # 11-19

<u>Money Laundering</u>

<u>Title 18, United States Code, Section 1956(a)(1)(B)(i)</u>

**\* Max. Penalty**:      (20) Twenty  years' imprisonment as to each count

**Defendant's Name**: <u>**MARLENE GUZMAN GARCIA**</u>

Count # 20

<u>Conspiracy to Solicit and Receive Health Care Kickbacks</u>

<u>Title 18, United States Code, Section 371</u>

**\* Max. Penalty**:        (5) Five  years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name: ROSA MARIA GARCIA**

**Case No:**

Count #: 1

Conspiracy to Commit Health Care Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**      (10) Ten years' imprisonment

Counts #: 2 - 9

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max. Penalty:**      (10) Ten years' imprisonment as to each count

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: **MIGUEL ANGEL PEREZ**

**Case No**:

Count #: 1

Conspiracy to Commit Health Care Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:        (10) Ten years' imprisonment

Counts #: 2 - 9

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max. Penalty**:        (10) Ten years' imprisonment as to each count

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: <u>YULIANA MORENO GARCIA</u>

**Case No**:

Count  #: 1

<u>Conspiracy to Commit Health Care Fraud</u>

<u>Title 18, United States Code, Section 1349</u>

**\* Max. Penalty**:        (10) Ten years' imprisonment

Counts #: 2 - 9

<u>Health Care Fraud</u>

<u>Title 18, United States Code, Section 1347</u>

**\*Max. Penalty**:        (10) Ten years' imprisonment as to each count

Count #: 10

<u>Conspiracy to Commit Money Laundering</u>

<u>Title 18, United States Code, Section 1956(h)</u>

**\*Max. Penalty**:        (20) Twenty years' imprisonment

Count s # 11-19

<u>Money Laundering</u>

<u>Title 18, United States Code, Section 1956(a)(1)(B)(i)</u>

**\* Max. Penalty**:        (20) Twenty  years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**